May I please be seated? May I have the clerk to call the case? 18-1878, U.S. Bank, special consignor of the estate of James Merrick, deceased at office of William Moran and Leeds, et al. I like the et al. That's good. Keep it short. Counsel that are going to argue, please approach. They found your mute button. I got the long answer. Okay. Identify yourselves for the record. Good morning, Your Honors. Carrie DeGrant for Dr. Moran, and I will address the main issues for all of the appellants. Hugh Berkley for Northwest Community Hospital. Counsel for Dr. Fierst and Dr. Baker also are here in the event that the court has any questions that it would like to particularly direct. All right. You're a KG veteran, so I'm sure you can figure it out. Thank you, Your Honor. Sure. Good morning, Your Honors. Before I begin, I'd like to reserve three minutes for rebuttal, if possible. Okay. Thank you. May it please the court, the trial errors in this case were numerous and thematic. The continuous and cumulative nature of the errors prejudiced the plaintiff in this case, denied the plaintiff a fair trial, and substantially prejudiced the plaintiff in the trial process. When did these errors first manifest themselves in the case? At what stage of the case? I believe, so the errors first manifested themselves in the case looking back probably in opening statement, and then in the first day of cross-examination of Dr. Shapira, in which case Dr. Shapira Before we get to Jay Shapira, let's talk about the opening statements. Okay. If the problem that is so egregious that you should get a new trial came up in opening statement, surely there must have been a motion to eliminate it. There was not a motion to eliminate it. Well, then there must have been objections during opening statement when these issues came up. There were not objections during the opening statement. So what happens is Dr. A, B, C, and D, who are not sued, never called in a cardiac consultant, and that is the error that you're talking about. That was mentioned in opening statement, but no objection was made. That's correct. No objection was made during opening statement. Opening statement is not evidence, as this Court knows. Opening statement is what counsel believes the evidence is going to show, and to be quite honest, none of these issues were addressed in any part of discovery. The opinions or cumulative opinions or unanimous opinions of these 12 undisclosed, undisclosed doctors was never discussed in any of the disclosures. Before you get to opinions, what you're talking about, the purveyment of your case here, comes down to a simple fact, and that is that each of these doctors treated the patient but did not recommend what your expert says should have been recommended for the deceased patient, right? I disagree with you, Your Honor. Okay. And the reason why is it's not that they didn't recommend it. There's no note in any record regarding a recommendation, regarding anything. And what would happen was counsels were able to take the absence of any note and make that an affirmative opinion, affirmative medical opinion, for 11 or 12 doctors that were never disclosed, never deposed. No one knew what they thought. You can't say they weren't disclosed. They're in the medical records. Maybe you didn't think they were, you know, important enough to take depositions of. I mean, your firm's known to take a lot of depositions. That is true. This I know. That is true. And I would agree with you. However, these weren't opinions that plaintiff was going to put forward. These were the medical opinions that defense was using to buttress its case. It used 12 undisclosed doctors, lumped them together with the opinions of their three defendant doctors, somehow amassing 15 unanimous opinions that a cardiology consult was not necessary. These doctors were not undisclosed. They were in the medical records that you had. But they weren't disclosed as 213 trial witnesses under F2 or F3. And that's what I mean by undisclosed. They weren't disclosed under 213 F2 or F3 trial witnesses, which is a requirement at trial. As this Court knows, 213 was a Supreme Court rule that was enacted in order to prevent prejudice in trial by ambush. That's what happened in this case. There was no mention of any cumulative opinion, any unanimous opinion, anywhere, in any deposition, in any opinions that were ever disclosed in this case. And yet the first day of trial, there was this theory that was introduced for the very first time that there was going to be unanimous opinions. Again, not evidence. So you're ambushed by a theory that was never mentioned, and you don't say, Objection, Your Honor. I'd like to be heard. What about forfeiture? Well, again, forfeiture I don't believe is applicable because, again, opening statement, then Dr. Shapiro is cross-examined. Dr. Shapiro is cross-examined regarding all these doctors. Again, a lot of them were not deposed. That was on a Friday. There was a weekend break. Over the course of the weekend, I actually wrote the motion to instruct the jury to disregard the opinions and the references by the counsel to all the undisclosed, undeposed doctors. It was presented Monday morning to the court. The court then allowed the testimony to continue, and then during the middle of the day, ruled on the motion after having read the motion. In the relief for the motion, we asked for three requests. The first request was to instruct the jury to disregard all these witnesses who were not called. The second request was to admonish the attorneys not to argue the observations, considerations, reasoning, rationale, and conclusions of undisclosed, undeposed doctors. The trial court in its order denied both of those requests. So effectively what happened was the court was given a written motion, was advised of all the discovery issues, had the opportunity to correct all the discovery issues. Then it occurred in the trial and going forward. The court denied that opportunity, didn't take that opportunity, thought that this was all proper. But it's not the court's case. It's your case. I mean, you could have decided to depose these doctors and see if there was enough juice there to add them as defendants, since it would be the same theory. You didn't call on a cardiac consult. Nobody did. That was your theory of the case, right? That is true. So, you know, why didn't you do that? Why didn't we take every? It seems like you set yourself up for the argument. You know, they're impeaching your case by your omission of not including other people as defendants when their conduct was the exact same and the central issue that you claim is the issue in the case. The problem is that they brought in their medical opinion that one was not necessary. If the defense is going to bring forward a medical opinion, that needs to be disclosed by Rule 213. It cannot be assumed by circumstantial evidence in a record. Medical opinions must be disclosed. That is the nature of Rule 213. It was violated in this case. The court was aware it was violated on the third day of trial. It disagreed and did nothing and allowed the violation to continue all the way through closing argument. In closing argument, the first thing that really happened during closing argument was a violation of the so-called Golden Rule in which the Dr. Friest attorney was allowed to tell the jury, Any one of us can find ourselves the defendant in the lawsuit. This was improper. This court and all Illinois courts have found arguments in which a defendant asks the jury to place itself in the shoes of a party to be erroneous. The trial court, upon hearing objection, overruled the objection, told the attorney to go ahead, and then gave an instruction, which was, ladies and gentlemen, this case is not about anybody. It's about the defendants in this case. The court didn't strike the statement. It didn't instruct the jury to disregard. During the motion for mistrial, the exact statement was read back to the court.  Now, the court didn't strike the statement. Instead, what the court did was it said it gave a curative ‑‑ first said it sustained the objection, which was incorrect, but then said it gave a curative instruction. It recited a different curative instruction than it actually gave and then wrote in its opinion that the error was cured. Now, just to illustrate my point, if the plaintiff, in arguing this case, had said to the jury, in reviewing the evidence, it's important to remember, or in reviewing the evidence, it's important to take this carefully because any one of us can be the victim of medical malpractice. Had that statement been given and had the same cautionary instruction that the judge given, I think this Court would have found that statement to be erroneous. I feel like the defendants wouldn't be supporting their statement by saying that it wasn't erroneous or wasn't prejudicial. Again, in closing argument, we get to the unanimous opinions. The unanimous opinions of these 11 or 12 undisclosed doctors. First, counsel for Dr. Moran. I keep saying undisclosed, but they're not undisclosed. They're in the medical records. They're undisclosed according to 213. So you're making the argument that this is not a fact. The treaters of this person in the hospital, that's not a fact, that they did and did not do it. What they did and did not do wasn't a fact. What was a fact was what was in their medical records. How they accomplished certain tasks, such as measuring the heart rate, wasn't in any evidence. It wasn't in any disclosures. That's a medical opinion. That requires expert testimony in terms of how you measure a heart rate, and yet the court allowed cross-examination regarding those topics on undisclosed issues, on undisclosed medical opinion, how 11 or 12 different doctors. Every single expert who testifies in a malpractice case relies upon the medical records for the admission in question, and that's what was done. It happens in every single medical malpractice case, every one that I ever tried. Okay, well, switching it around, why didn't any of the defendant experts or any of the defendants themselves testify that there was a unanimous opinion of 12 or 15 different doctors? If it's a medical fact, why didn't they testify to it? Why wasn't that a disclosure? Why would they even need to disclose that opinion? Maybe they felt it would be more effective to do it the way they did it. Well, again, that's a trial. It's a trial by ambush because it's a medical opinion as to what 11 or 12 different doctors thought, what they felt, what they believed, whether they agreed with the defendants. That's a medical opinion, and it wasn't disclosed in 213F2 or F3 by any of the defendants. But you're the ones who made the decision not to add all of these other doctors who allegedly did this same act of medical negligence that you claim that the named defendants did by not ordering a cardiac counsel. You set all this up. You're the architect of this particular building. There are two issues regarding that aspect, which is the plaintiff set this up. In reviewing the motion judge, the initial disclosures, the plaintiff actually did disclose many of these witnesses, and there was pressure put on by the motion judge to the plaintiff's counsel to reduce the number of treating doctors because there was such a voluminous amount. And so there was pressure put on to reduce the amount, which plaintiff's counsel did. Now, I would just offer this in terms of a judicial economy standard or effect, and I think a consideration that needs to be taken place, which is if defense counsels are able to use medical records and then ascribe a medical opinion to doctors that have never testified, it will require plaintiff's counsels to take depositions of every single medical provider in the record. So now we're talking about requiring a plaintiff's counsel to, at least in this case, possibly take 50, 60 depositions of treating nurses, treating doctors, to ensure that they don't share an opinion that the defendant shouldn't have ordered a cardiology counsel or so that defense counsel can't somehow look at the absence of any information in the record and ascribe a medical opinion to them. Now, let's be clear here. You were not refused or denied the opportunity to take the discovery depositions of any of these doctors, correct? You didn't subpoena them and the judge said, no, that's too much discovery, didn't allow you to take it. That didn't happen, however, if you do review the record from the motion court, the motion judge, I believe there were about 26 or something like that, disclosed doctors, and the motion judge said, are you really going to call these a trial counsel? And we agreed then to reduce the number of witnesses, of treating physician witnesses that we were disclosing as treating physicians. And many of these treating physicians ended up to be these unanimous opinions. So, again, I go back to the judicial economy issue. If a counsel can look at the absence of a record and then say, oh, well, because they didn't write anything in that record, they agree with my position, it's going to require parties to take unnecessary deposition testimony. I would use another situation, again, just switching this around a little bit, as an illustrative point. If the plaintiff's counsel in this case had then turned around and said, well, there was only two doctors in this case that wrote discharge orders. There were 12 that didn't. So now, all of a sudden, those 12 doctors agree with our experts that the discharge wasn't proper in this case. Are we really going to create a situation where attorneys are going to be able to look at the absence of any evidence in a record and somehow ascribe an opinion that undisclosed, undeposed doctors, because they said nothing about an opinion, now agree with that party's position? So in terms of the apparent agency issue, this issue is reviewed de novo by this Court. The trial court in this case initially denied a motion for a direct advertise, then upon admission of consent forms, granted a motion for a directed verdict at the close of all evidence. I think if you look at the record, and my brief, I think, is what will lace this out as well as I can orally, there's plenty of evidence in the record for plaintiffs who have been able to argue and for the jury to potentially have found an apparent agency argument. And so I believe it was air for the Court to deny the motion for a directed verdict at the close of all evidence. So in terms of 213 violations, I believe there are plenty of cases that this Court could review in which there weren't proper 213F disclosures for opinions, in which the case was a direct advertise. It was eventually reversed and remanded. I ask this Court to review Copeland v. Stedco Products, 316 L.F. 3rd, 932 1st District, along with Clayton v. Cook County, 346 L.F. 3rd, 367 1st District, 2003. If there are any other questions, I will reserve the rest of my time for rebuttal. Good morning again, Your Honors. Karen DeGrand, counsel for the appellee, Dr. Moran, and arguing on behalf of all of the defendants on these issues. I think this Court knows what Rule 213 says and what the cases say and to what it applies. I think Judge Senechal raised a very valid question at the hearing on the post-trial motion, and that was to direct the Court to review the motion. I think it was a very valid question to direct to plaintiff's counsel, you know, what are you saying was improper? Because everything was, I would say, sort of rolled up into one ball in counsel's argument. But what we have here is, I think, an attempt by counsel to attribute Rule 213 disclosure requirements to argument of counsel. Because clearly, Rule 213 did not require the defendants to disclose the cross-examination of plaintiff's experts. I mean, that's just a non-starter. I think I barely even have to make that observation to the Court. And that type of cross-examination proceeded before there was ever an objection and before the motion was presented. And there, you know, it's important to note that these very experienced trial lawyers, after hearing opening statement, not objecting, after hearing the direct examination of Dr. Shapira, not objecting, what was the reaction in redirect? Then the, rather than objecting and, frankly, raising what I think counsel knew would be an ill-fated attempt to try to restrict any cross-examination, based on the medical facts. These are medical facts. These are not opinions. So you were impeaching the credibility of the experts' opinions by the omission of certain information in the medical records. By going through the medical records, Your Honor, correct, and by saying, this is what the treatment was. Was it not? It was not this. It was not that. That is absolutely fair game on cross-examination. And there's a significant error in the plaintiff's reply at page four. Plaintiffs say, well, they didn't raise the issue on redirect with any of their experts about what's the appropriate interplay between attending physicians and consulting physicians, who's in charge of deciding or recommending consultants. They say that wasn't raised until after Judge Senechal granted in part and denied in part the motion to instruct and for all the other relief that was requested. Not true. It was raised during Dr. Shapira's redirect examination. So that was an election that counsel made before there was any argument, any, rather, any objection, and any argument before the court, where the court very wisely exercised its discretion. And said, all right, this is fair game for cross-examination. But there were certain aspects of cross-examination. In a sense, the court did extend some relief to counsel and or to plaintiffs and said, I'm not going to grant your motion to the extent that there's any insinuation about reading depositions that don't exist. I'm not granting your motion, but then as to the cross-examination, but defer to counsel. I don't expect to hear you elicit from your witnesses anything that wasn't disclosed. So that's exactly proper application of Rule 213. And interestingly, this was a significant part of plaintiff's reply, that to object would have been futile as the trial went on. Well, it certainly, that's just not a fair rendition of the way Judge Senechoff conducted this trial. First of all, when the motion was presented, the court gave plaintiffs some relief. And there also was an aspect of that motion, which was, don't let them argue this. Well, the court didn't say anything about argument when it ruled on the motion in, you know, in the early stage of plaintiff's case. So now, weeks later, when everyone's closing, if counsel truly wanted to raise an objection, rather than continue with the strategy that counsel had employed throughout the trial, it would have raised that objection or re-raised the motion at that time, or at least objected during the closing arguments. Of course it didn't, because plaintiff's counsel, like defense counsel, throughout the cross-examination of the defense witnesses, did the same thing that they're complaining about now. And in closing argument, did the same thing that they're complaining about now. Even in opening, did the same thing that they're complaining about now. In opening, there was a reference to what Dr. Albert had done and thought. And that witness was not coming in to testify at trial. So here we have these good trial lawyers who know exactly what they're doing, who know exactly what they can do on cross-examination, who know that when it comes time for closing argument, they get up, they talk about the medical facts, they talk about the testimony, and they draw inferences that are reasonably related and fair based on the evidence. And that's what happened in this case, Your Honor. Certainly there was every indication that this judge would have given a fair shot to any objection that was raised. And it simply wasn't. We can actually bypass all of this argument and go directly to what I think is absolutely fatal to plaintiff's appeal, which is the two-issue or general verdict rule. And Judge Senechel, in the argument of the post-trial motion and the memorandum opinion that he wrote, recognized that the plaintiff simply would not be in a position to prove any kind of impact of the discussion about what was in the medical records, given the fact that the defense had a very robust causation defense, probably equally as robust as the defense that all of the doctors complied with the standard of care. This was a case that the plaintiff raised based on the electrical functioning of the heart. And it was clear, even out of the mouths of the plaintiff's experts, that the person who really would know all about the electrical function of the heart is an electrophysiologist. There was one electrophysiologist who testified at trial, and he testified for the defense. And he was great. And he was, he's a gold star electrophysiologist who had never testified at trial before, who has impeccable credentials, and explained everything, and explained that even if, let's say the plaintiff was right with their core theory, which was that there should have been a cardiologist called in by one of the defendants to take a look at Mr. Mertens and evaluate him from a cardiology standpoint before he was discharged on July 6th. Even Dr. Kinder, the physician I'm speaking of, and also another expert testifying for the defense, Dr. Shaines, made very clear that had a cardiologist or an electrophysiologist even, you know, more specialized, come in and evaluated Mr. Mertens, they still would have said, you're fine to go on July 6th. This is the classic two-issue rule situation. And for that reason, in addition to reviewing all of the points that plaintiff has had raised on the substance, and also noting the extensive waiver, Judge Shenasol denied the post-trial motion. And how could he not? There also was argument today about the golden rule that's handled in the briefs, but I'll just very quickly comment on that. This was one comment, five weeks of trial, one comment, when there was an objection, the judge very promptly said, listen, this is not about anybody. This was a comment that was made without a motion, without repeating, in isolation, in the context of you have to prove your case, in context of the burden of proof. It wasn't an emotional comment, as Judge Shenasol found. And of course, Judge Shenasol, respectfully more so than this Court, could rule on what was the impact of anything that was said or occurred in the Court. And Judge Shenasol said that it just had no impact, and it certainly did not. And I will close with this comment, unless the Court has any questions for me. And I believe this truly puts an exclamation point on the waiver issue, and that is that counsel made a motion for mistrial based on the golden rule argument or comment, or allegedly the golden rule comment. And this followed the arguments of Mr. Burden and Mr. Schweitzer, and this followed – there was also an issue raised about another problem that plaintiffs had with Mr. Burden's argument, my partner. And that issue wasn't raised in the appellate court, so not before the Court today. But the interesting point is that counsel complains now about Mr. – about the comments that were made during Mr. Burden's and others' arguments about the consulting physicians who didn't call for a cardiology consult, but that wasn't raised at the motion for mistrial. So I think that tells us that this is clear with waiver, and this is what – this is the strategy that the plaintiffs decided to proceed with. And it didn't work out, and now there's an argument, and I probably foul, and we would ask the Court to affirm the judgment in favor of all the defendants. Thank you. Good morning, Your Honors. Hugh Griffin again for Northwest Community Hospital. The hospitals in this case solely on the theory of apparent agency for the conduct of Dr. Baker and Dr. Moran. So we wholeheartedly endorse all the arguments Mr. Gran just made, because obviously if the verdict is affirmed against Dr. Baker and Dr. Moran, it also has to be affirmed against Northwest. The only point – additional points I would make is that aside from all that, there's a wholly independent separate basis on which the verdict has to be affirmed against Northwest, and that is the plaintiff didn't prove either element of this apparent agency claim against Northwest for the conduct of Dr. Baker and Dr. Moran. As far as Dr. Baker, it was so obvious that he hadn't done so that Seneschal properly directed a verdict for the hospital on that claim. Initially on the ground, during the motion for directed verdict, he initially said, look, you've got to meet this reliance element, and that requires you to prove that Mr. Mertens didn't choose Dr. Baker, but he relied on the hospital for Dr. Baker to be involved. And Judge Seneschal said there's not a scintilla of evidence that can support that claim. The evidence was that Dr. Pierce was the intern and the attending physician up until July 5th, the morning of July 5th, and at that point, because of some orders that Dr. Pierce had entered as some steroids and other issues, Mr. Mertens quote fired, that was the language that Mrs. Mertens used, fired Dr. Pierce, but in doing so, he said to Dr. Pierce, you give me another internist, and you find me another internist. And so Dr. Pierce, acting on those instructions, told him, I will get you another internist, I'm going to get you a hospitalist, somebody that works only in the hospital, and he will be your new internist. And that was the evidence. He called best practices, who has physicians that only practice in the hospital, and that's how Dr. Baker became involved in the care. So that just wiped out the reliance element, so that was the basis of Judge Seneschal's initial ruling and directed verdict. Then on the post-trial motion, he properly said, you know, the direct verdict will also stand on the holding out issue, giving the disclosure statement in the universal consent form that Mr. Mertens signed and initialed each paragraph, including the disclosure statement, saying my care will be managed by physicians who are not employed by or acting as agents of NCH, but of privileges at these facilities. I understand NCH does not exercise any control or authority over these physicians' diagnosis or treatment decisions, and I will receive a separate bill for that, which he did. So on both grounds, the directed verdict can certainly stand. As far as Dr. Moran, the same arguments apply. It's the same consent form. With respect to the reliance element, the issue, the evidence was that Dr. Moran and Dr. Fierst were office mates and that Dr. Moran would cover for Dr. Fierst when Dr. Fierst couldn't attend, and that was July 4th, and that's how he got involved in that one day of care. So, again, there was no evidence that NCH was responsible for Dr. Moran being there. But that's all academic anyway. We went to the jury against Dr. Moran, and the jury returned a general verdict in favor of all the defendants, and under this kind of a double two-issue rule of submit, under the two-issue rule, we presumed that all issues that were submitted to the jury were decided in favor of the prevailing party. So we assume the jury also found that there was no sufficient proof of the elements of a parent agency. So on those additional grounds, we would ask for information on behalf of the House. Thank you very much. Thank you. The defense counsel brought up Dr. Albert, saying, accusing the plaintiff of using the same sort of opinions and argument that defense counsel did, saying, well, look what plaintiff's counsel did with Dr. Albert. The distinction is Dr. Albert was disclosed under 213 and was deposed. None of the 11 or 12 doctors that defense counsel referenced to were disclosed or deposed. Counsel talks about or discussed how there was no objection to any of these issues after the motion was decided, and it was plaintiff's understanding, based on the breadth of the motion, what the request for relief was, and how the judge promptly shut it down and denied the two most important requests for relief that the judge had made up his mind on this issue. The most important reason to bring an objection is to raise it in front of the judge so the trial court can correct the error. Here, the plaintiff's counsel did that. He did it through written motion, argument, supporting records, and the court denied it. The general verdict rule is found under 735 ILCS 5-2-1201. Plaintiff would ask his court to review the plain language of the general verdict rule, which is in 1201D. The plain language really provides two circumstances under which a general verdict should apply, one in which it states that a claim should not be set aside or reversed for the reason that any ground is defective if one or more grounds is sufficient, and the verdict shall not be set aside or reversed for the reason that the evidence in support of any ground is insufficient to sustain recovery thereon when there are more than one count. In this case, the reason for reversal is not because of a lack of sufficiency of the evidence, but it's because of the prejudice that the plaintiff had to endure throughout the trial. It was evidence that was not presented or opinion evidence that was not disclosed prior to trial, as was required by 213. It was a proper argument. Based on the cumulative nature of the errors, the fact that the cumulative nature of the error lasted the entire trial, Plaintiff believes that they were denied a fair trial in this case, and that they were denied a – that they were substantially prejudiced by the evidence that was admitted, the opinion testimony that was admitted, and the arguments that were made. For that reason, we ask that this Court reverse for a new trial and remand it to the trial court for a new trial against all parties. Thank you. Thanks for the briefs and the arguments. We will take the matter under advisement and issue an opinion forthwith. We're going to take a brief break for a change of panel for the next.